IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LIBERTY DIALYSIS - HAWAII, LLC, a Hawaii limited liability company, and ST. FRANCIS MEDICAL CENTER, a Hawaii limited liability company, | ) ) ) ) ) ) ) | CIVIL NO. 07-00286 SOM/KSC  ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FRESENIUS MEDICAL CARE HOLDINGS, INC., a Delaware corporation, dba FRESENIUS MEDICAL CARE NORTH AMERICA, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This case arises out of an option to purchase kidney dialysis businesses.  St. Francis Medical Center and Liberty Dialysis - Hawaii, LLC, seek to require Fresenius Medical Care Holdings, Inc. ("FMC"), to comply with the option provisions, as Plaintiffs interpret them.  Initially, this court notes that, because St. Francis assigned its option rights to Liberty Dialysis, Liberty Dialysis is the only proper Plaintiff.  The parties should therefore remove Saint Francis as a party.

FMC has moved for summary judgment.  Because FMC has not established that it is entitled to summary judgment as a

matter of law, and because there are genuine issues of material fact, FMC's motion is denied.

II.      SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).  "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only."  Rule 56 Advisory Committee Notes, 2007 Amendments.  The court therefore interprets the amended rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both

the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) ("A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.").  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller,

454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted); accord McSherry v. City of Long Beach, 560 F.3d 1125, 1129 (9th Cir. 2009) ("All justifiable inferences are to be drawn in favor of the non-moving party and his evidence is to be believed.").

4

III.       BACKGROUND FACTS.

In 1998, St. Francis and FMC formed a joint venture called Integrated Renal Care of the Pacific, LLC, a Hawaii limited liability company, for the purpose of operating outpatient kidney dialysis clinics in Hawaii.  St. Francis had already been performing kidney dialysis for patients in Hawaii, but FMC had not been doing any business in Hawaii.  See Declaration of Cynthia Okinawa ¶¶ 6-7 (Apr. 11, 2009); Limited Liability Company Operating Agreement of Integrated Renal Care of the Pacific, LLC a Hawaii Limited Liability Company (Oct. 30, 1998) ("Joint Venture Agreement") (attached as Ex. 1 to FMC's Concise Statement).

St. Francis insisted that it have a controlling interest in the joint venture to ensure that the joint venture did not favor patients with private commercial health insurance to the detriment of the poor and uninsured.  Okinawa Decl. ¶¶ 9-12.  St. Francis therefore had a 51% ownership interest, and FMC had a 49% ownership interest in Integrated Renal Care.  See Joint Venture Agreement at 1.

The Joint Venture Agreement provided that St. Francis or FMC could assign "all of part of its Membership Interest only with the prior written consent" of the other.  See Joint Venture Agreement ¶ 8.1.  The agreement defined "Membership Interest" as "ownership interest in the Company [Integrated Renal Care] of

5

each Member [St. Francis and FMC, and their assignees], including all rights pertinent thereto."   Id. ¶ 1.23.

On the same day that St. Francis and FMC executed the Joint Venture Agreement, they entered into a letter agreement containing noncompetition and right-of-first-refusal clauses ("October 1998 Letter Agreement").  This letter agreement was not mentioned in the Joint Venture Agreement.  The October 1998 Letter Agreement provided:

> For so long as FMC holds a membership
> interest in the LLC (the "Term") and for two
> (2) years thereafter, FMC will not engage,
> directly or indirectly, either as principal,
> agent, proprietor, shareholder, owner,
> partner, consultant, manager or employees, or
> participate in the ownership, management,
> operation or control of any hemodialysis
> facility or acute dialysis business that
> would compete with the [St. Francis] Business
> within the State of Hawaii.

October 1998 Letter Agreement (attached to Defendant's Concise Statement as Ex. 2).  The October 1998 Letter Agreement allowed FMC to develop and/or acquire dialysis facilities outside of Hawaii but within the "Pacific Islands" so long as FMC provided St. Francis with an opportunity to purchase an interest in those facilities equal to St. Francis's ownership interest in Integrated Renal Care, the joint venture.  Id.  This covenant not to compete was accompanied by a right of first refusal that allowed St. Francis to purchase any dialysis business that FMC

acquired or operated outside of Hawaii but in the "Pacific Islands." Id.

A little more than a year later, in January 2000, FMC contracted with Renal Treatment Centers-Hawaii, Inc., to purchase Renal Treatment Center's six Hawaii dialysis centers and to have an option to purchase its affiliated dialysis businesses on Guam. See Asset Purchase Agreement (Jan. 18, 2000) (attached to Plaintiffs' Concise Statement as Ex. 9); Declaration of Jessica Stewart ¶ 14 (March 4, 2009) (indicating that, in January 2000, FMC acquired Renal Treatment Center's six dialysis centers in Hawaii and had an option to acquire Renal Treatment Center's affiliated dialysis centers on Guam). According to FMC, in 2000, ownership of the six dialysis centers in Hawaii was transferred to Bio-Medical Applications of California, Inc. ("Bio-Med"). Bio-Med is a wholly owned subsidiary of Bio-Medical Applications Management Company, Inc., a wholly owned subsidiary of National Medical Care, Inc., which is in turn a wholly owned subsidiary of FMC. See Declaration of Domenic P. Gaeta, Assistant Secretary of Bio-Med (June 5, 2009). Bio-Med represents that, as an indirect wholly owned FMC subsidiary, it can be required by FMC to transfer ownership of the dialysis clinics to Plaintiffs if they prevail on their specific performance claim. Id. ¶ 6. Bio-Med, through its assistant secretary, has waived its presence in this case. Id. ¶ 7.

In light of the noncompete and right-of-first-refusal clauses in the October 1998 Letter Agreement, FMC and St. Francis entered into a Release and Waiver Agreement in January 2000.  See Release and Waiver Agreement (dated January 2000) (attached to Plaintiffs' Concise Statement as Ex. 11).  In exchange for allowing FMC to purchase the Hawaii dialysis businesses,[1] St. Francis was given the right to manage those business and an option to purchase all of the dialysis centers at any time during a thirty-six-month period.  After the thirty-six-month period, St. Francis had an option to purchase 60% of the dialysis units. Id.

The January 2000 Release and Waiver Agreement was modified in March 2000.  In consideration of FMC's payment to St. Francis of one million dollars (in lieu of the right to manage the dialysis centers), St. Francis waived the noncompete and right-of-first-refusal clauses contained in the October 1998 Letter Agreement with respect to FMC's purchase of Hawaii

---

[1]The January 2000 Release and Waiver Agreement specifically allows FMC to purchase the Hawaii dialysis businesses from Total Renal Care and operate them, without mention of Renal Treatment Centers-Hawaii, Inc., which is the company with whom FMC executed the Asset Purchase Agreement.  See Ex. 9 to Defendant's Concise Statement.  There appears to be no dispute, however, about which Hawaii dialysis businesses were being purchased.  The record, in fact, appears to indicate that Total Renal Care and Renal Treatment Centers-Hawaii, Inc., are somehow related, as the January 2000 Asset Purchase Agreement provides that notice to Renal Treatment Centers-Hawaii, Inc., shall be given "c/o Total Renal Care Holdings, Inc."  See January 2000 Asset Purchase Agreement at 31.

dialysis units owned by Renal Treatment Centers-Hawaii, Inc., and FMC's purchase of Guam dialysis units owned by Guam Renal Care Partnership, Pacific Dialysis Partnership, and Total Renal Care, Inc.

With respect to FMC's purchase of dialysis businesses in Hawaii, the March 2000 agreement provided that St. Francis had an eighteen-month option to purchase 100% of the Hawaii businesses at the price FMC paid for them.  This period was followed by a second eighteen-month option period in which St. Francis had the right to purchase 100% of the Hawaii business at either 1) the price FMC paid plus amounts expended by FMC for capital improvements, or 2) the fair market value of the businesses.  At any time following the expiration of the second eighteen-month option period, St. Francis had an option to purchase 60% of any or all of the Hawaii businesses at fair market value.  <u>See</u> Release and Waiver Agreement (dated March 2000) (attached to Defendant's Concise Statement as Ex. 3).

With respect to FMC's purchase of dialysis businesses outside of Hawaii but within the "Pacific Islands," the March 2000 Release and Waiver Agreement provided that St. Francis had a right to purchase up to 80% of FMC's ownership interest at fair market value.  FMC represents that it did not acquire any dialysis business in Guam, making the 80% option inapplicable. <u>See</u> Declaration of Jessica Stewart ¶ 14 (March 4, 2009).

9

The March 2000 Release and Waiver Agreement contained several conditions subsequent.  In relevant part, the agreement stated that the 60% and 80% options "[s]hall be effective only once all applicable legal and regulatory constraints have been satisfied, or removed, in FMC's reasonable discretion."  Id. ¶ 3, last paragraph on 3.  It also stated, "This Agreement and the rights and obligations contained herein, are specifically condition[ed] upon FMC's acquisition of all of the Hawaii Units and Pacific Island Units."  March 2000 Release and Waiver Agreement ¶ 4.  Notwithstanding this latter condition, FMC still had to pay St. Francis $1,000,000 within seven days of FMC's acquisition of the Hawaii dialysis centers.  Id.

The March 2000 Release and Waiver Agreement had a waiver provision stating, "If any provision of this Agreement is waived in any manner, whether by agreement or operation of law, the balance of the provision shall nevertheless remain in full force and effect and shall in no way be waived, affected, impaired or otherwise invalidated."  Id. ¶ 8.

An integration clause stated that the March 2000 Release and Waiver Agreement "contains all of the terms and conditions agreed upon by the parties regarding the subject matter of this Agreement and supersedes any prior agreements, promises, negotiations or representations, either oral or

written, relating to the subject matter of this agreement." Id. ¶ 9.

There is no dispute that FMC purchased all of the Hawaii dialysis units and that, pursuant to the March 2000 Release and Waiver Agreement, FMC paid St. Francis one million dollars. There is also no dispute that FMC purchased no Pacific Island units.

On December 31, 2001, St. Francis sold FMC its ownership interest in Integrated Renal Care of the Pacific, LLC, the joint venture. See Purchase Agreement (Dec. 31, 2001) (attached to Plaintiffs' Concise Statement as Ex. 13). Notwithstanding the sale of St. Francis's ownership interest in the joint venture, St. Francis retained its rights under the "Non-Competition Agreement" (defined on page 5 as the October 1998 Letter Agreement) and under the Release Agreement (defined on page 6 as the March 2000 Release and Waiver Agreement). See Purchase Agreement (Dec. 31, 2001) ¶ 8.5(b).

On June 30, 2002, St. Francis and FMC amended the October 1998 Letter Agreement's covenant not to compete. The language "For so long as FMC holds a membership interest in the LLC" was amended to read "For the period of time commencing on the date hereof and ending May 16, 2007." As amended, the provision reads:

> For the period of time commencing on the date hereof and ending May 16, 2007 (the "Term")

11

> and for two (2) years thereafter, FMC will
> not engage, directly or indirectly, either as
> principal, agent, proprietor, shareholder,
> owner, partner, consultant, manager or
> employees, or participate in the ownership,
> management, operation or control of any
> hemodialysis facility or acute dialysis
> business that would compete with the [St.
> Francis] Business within the State of Hawaii.

Amendment to Non-Competition Agreement (June 30, 2002) (attached to Plaintiffs' Concise Statement as Ex. 16).

On August 24, 2005, St. Francis sold its dialysis business to Liberty Dialysis - Hawaii, LLC.  See Asset Purchase Agreement (Aug. 24, 2005) (attached to Plaintiffs' Concise Statement as Ex. 21).  Via a letter agreement dated the same day, St. Francis transferred all of its rights under the October 1998 Letter Agreement (as amended by the June 30, 2002, Amendment to Non-Competition Agreement) to Liberty Dialysis - Hawaii, LLC. Id.  Both St. Francis and Liberty Dialysis say that St. Francis's rights under the March 2000 Release and Waiver Agreement were transferred to Liberty Dialysis.  See Declaration of Sister Agnelle Ching ¶ 5 (Apr. 23, 2009); Declaration of Mark Caputo ¶ 5 (Dated April 2009).

On April 24, 2007, before the expiration of the covenant not to compete on May 16, 2007, Liberty Dialysis and St. Francis filed a state court Complaint.  On May 30, 2007, the Complaint was removed to this court.  See Notice of Removal (May 30, 2007).  On September 18, 2008, Liberty Dialysis and St.

12

Francis filed an Amended Complaint.  The Amended Complaint seeks specific performance of provisions in the March 2000 Release and Waiver Agreement allowing St. Francis (or Liberty Dialysis, its assignee) to purchase 60% of the Hawaii dialysis centers purchased by FMC.  St. Francis and Liberty Dialysis alternatively seek damages for FMC's alleged refusal to honor the March 2000 Release and Waiver Agreement.

FMC has moved for summary judgment.  That motion is denied.

IV.     ANALYSIS.

        A.   Bio-Med is Not a Necessary Party.

At the initial hearing on this motion, FMC raised the issue of whether Bio-Med, FMC's indirect wholly owned subsidiary, is a necessary party, as Bio-Med owns and operates the Hawaii dialysis centers that are allegedly subject to purchase by Liberty Dialysis.  FMC recognized that Bio-Med's joinder would destroy this court's diversity jurisdiction.  The court asked the parties to brief the issue.  Plaintiffs and FMC now conclude that Bio-Med need not be joined in this action.

Whether Bio-Med must be joined in this action is governed by Rule 19 of the Federal Rules of Civil Procedure.  The Ninth Circuit interprets Rule 19 as requiring a "three-step process."  United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999).  "First, the court must determine whether the absent party is 'necessary.'"  Id.  "If the absent party is 'necessary,' the

13

court must determine whether joinder is 'feasible.'"   Id.
"Finally, if joinder is not 'feasible,' the court must decide
whether the absent party is 'indispensable.'"   Id.   The Ninth
Circuit has stated that, for purposes of Rule 19, a party is
"necessary" in two circumstances: when complete relief is not
possible without the absent party's presence, or when the absent
party claims a legally protected interest in the action.   Id.
Because Bio-Med has represented to this court that FMC can
"cause" it to transfer the 60% interest in the dialysis clinics
to Plaintiffs should Plaintiffs prevail at trial, and because
Bio-Med is waiving its presence in this case, Bio-Med need not be
joined in this action.   Should Liberty Dialysis prevail at trial,
this court intends to hold FMC and Bio-Med to their
representations.

FMC is ordered to provide Bio-Med with a copy of this
order.  FMC is further ordered to submit to the court a
declaration indicating how and when Bio-Med was sent a copy of
this order.

B.   Liberty Dialysis is the Proper Plaintiff.

Plaintiffs agree that St. Francis transferred its
rights under the March 2000 Release and Waiver Agreement to
Liberty Dialysis.  Sister Agnelle Ching, the CEO of St. Francis
Healthcare System of Hawaii and a St. Francis director, says that
the transferred rights included the option rights.   See

Declaration of Sister Agnelle Ching ¶ 5 (Apr. 23, 2009).  Mark
Caputo, the Chief Executive Officer of Liberty Dialysis,
similarly says that it was Liberty Dialysis's intention to
purchase the 60% option rights from St. Francis.  <u>See</u> Declaration
of Mark Caputo ¶ 5 (Dated April 2009).  Caputo says that the 60%
option rights were transferred from St. Francis to Liberty
Dialysis in the Asset Purchase Agreement of August 24, 2005.  <u>Id.</u>
¶ 7.  Plaintiffs say that St. Francis is included as a party in
response to FMC's assertion that the documents do not support the
transfer.  This court need not determine whether the 60% option
rights were expressly transferred via the Asset Purchase
Agreement.  As discussed below, even if the 60% option rights
were not expressly transferred via the Asset Purchase Agreement,
those rights would have been transferred to Liberty Dialysis as
part of the goodwill of St. Francis's business when the business
was sold to Liberty Dialysis.

Because options involving businesses are generally
assignable and because the transfer of the option to Liberty
Dialysis was not expressly prohibited, Liberty Dialysis is the
proper plaintiff in this matter.  <u>See</u> <u>Sky Capital Group, LLC v.</u>
<u>Rojas</u> 2009 WL 1370938, *9 (D. Idaho, May 14, 2009) ("Generally,
a non-compete covenant ancillary to the sale of a business is
assignable and an express assignment of the covenant to the
subsequent purchaser is unnecessary; the covenant is treated as

part of the goodwill of the business sold.") (quoting Bybee v. Isaac, 178 P.3d 616, 623 (Idaho 2008)); Terra Firma Dev. Co. v. Duce, 1997 WL 159220, *4 (Wash. App. Div. 1, Apr. 7, 1997) ("As a general rule, an option contract is assignable unless such assignment is expressly prohibited by statute or contract, or is in contravention of public policy."); see also Restatement (Second) of Contracts § 317(2) and 317, illus. 6 (1979) ("B sells his business to A and makes a valid contract not to compete.  A sells the business to C and assigns to C the right to have B refrain from competition.  The assignment is effective with respect to competition with the business derived from B.").

This court is not persuaded by FMC's citation of UARCO Inc. v. Lam, 18 F. Supp. 2d 1116, 1112 (D. Haw. 1998), for the broad proposition that covenants not to compete are not assignable because they are personal in nature.  UARCO involved covenants not to compete arising out of an employment contract. Judge Alan C. Kay ruled that such covenants are essentially personal services contracts that are not assignable.  However, Judge Kay noted that, when a company becomes a successor company, possessing all of the rights and obligations of the predecessor company, covenants not to compete are not really being assigned. Instead, the covenants are transferred along with all of the other rights and obligations of the predecessor company.  Judge Kay ruled that the successor company in UARCO could enforce the

covenants not to compete because they passed to the successor company by operation of law.  Id.  UARCO therefore actually supports this court's conclusion that, when St. Francis sold its business to Liberty Dialysis, the rights and obligations arising under the March 2000 Agreement were transferred by operation of law to Liberty Dialysis and were not a prohibited assignment of those rights.

FMC argues that, under the Joint Venture Agreement, St. Francis was not allowed to assign its rights to Liberty Dialysis without FMC's consent.  FMC points out that, under the Joint Venture Agreement, St. Francis could not assign "all of part of its Membership Interest" without FMC's prior written consent. See Joint Venture Agreement ¶ 8.1.  The agreement defined "Membership Interest" as "ownership interest in the Company [Integrated Renal Care] of each Member [St. Francis and FMC, and their assignees], including all rights pertinent thereto."  Id. ¶ 1.23.  St. Francis, however, is not claiming that it has a right to purchase 60% of the Hawaii dialysis business acquired by FMC pursuant to the Joint Venture Agreement or the October 1998 Letter Agreement.  Instead, St. Francis is asserting rights under the March 2000 Release and Waiver Agreement.  FMC is assuming that the rights granted to St. Francis under the March 2000 Release and Waiver Agreement are nontransferrable because they are "rights pertinent" to St. Francis's ownership interest in

17

Integrated Renal Care, the joint venture.  That assumption is not justified on the record before this court.

The March 2000 Release and Waiver Agreement involves rights separate and apart from any ownership interest in the joint venture.  The March 2000 agreement (executed more than a year after the October 1998 Joint Venture Agreement containing the nonassignability clause) has an integration clause, indicating that it "contains all of the terms and conditions agreed upon by the parties regarding the subject matter of this Agreement and supersedes any prior agreements, promises, negotiations or representations, either oral or written, relating to the subject matter of this agreement."  March 2000 Release and Waiver Agreement ¶ 9.  The court additionally notes that the parties themselves have treated the March 2000 Release and Waiver Agreement as separate and apart from the joint venture.  See, e.g., Dec. 2001 Purchase Agreement ¶ 8.5(b) (St. Francis sold its ownership interest in the joint venture to FMC, but retained its rights under the March 2000 Release and Waiver Agreement).

The court is also unpersuaded by FMC's argument that, because the rights granted to St. Francis in the March 2000 Release and Settlement Agreement had their genesis in the October 1998 Letter Agreement's noncompete and right-of-first-refusal clauses, the nonassignability clause contained in the Joint Venture Agreement executed the same day as the October 1998

18

Letter Agreement should apply.  That argument simply ignores the separate existence of the March 2000 Release and Waiver Agreement.  After St. Francis and FMC formed their joint venture in 1998, FMC wanted to acquire more dialysis treatment centers in Hawaii.  To avoid violating the noncompete and right-of-first-refusal clauses, FMC paid St. Francis one million dollars and gave St. Francis an option to purchase all or part of the treatment centers in return for St. Francis's waiver of those clauses.  Specifically, the March 2000 Release and Waiver Agreement provided that, within the first thirty-six months, St. Francis could purchase 100% of the Hawaii dialysis treatment centers being purchased by FMC.  After thirty-six months, St. Francis had the right to purchase 60% of the dialysis centers.  See March 2000 Release and Waiver Agreement.  That right to purchase 60% of the Hawaii businesses is at the heart of the Amended Complaint.

Given the integration clause contained in the March 2000 Release and Waiver Agreement, which is the document granting St. Francis the option to purchase 60% of FMC's future Hawaii dialysis businesses, FMC does not establish as a matter of law that St. Francis needed FMC's consent to the transfer under a clause in the separate Joint Venture Agreement.  The Joint Venture Agreement was executed in October 1998, more than a year before the parties executed the March 2000 Release and Waiver

Agreement.  Had the parties wanted to restrict the assignability of the 60% option, they could have easily done so in the March 2000 agreement.  As that agreement was fully integrated, this court does not read such a restriction into it.  See Restatement (Second) of Contracts § 209(1) ("An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement."), and § 210(1) (Westlaw 2009) ("A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement.").

FMC next argues that the right to acquire 60% of the Hawaii businesses could not be assigned from St. Francis to Liberty Dialysis without FMC's consent because the March 2000 Release and Waiver Agreement attached the October 1998 Letter Agreement to it and incorporated that letter agreement by reference.  Because the October 1998 Letter Agreement was executed on the same day as the Joint Venture Agreement containing the nonassignability clause, FMC argues that the nonassignability clause applies to the March 2000 Release and Waiver Agreement.  At the very least, this argument raises questions of fact.  The recital section of the March 2000 Release and Waiver Agreement sets forth the existence of the October 1998 Letter Agreement containing St. Francis's option to purchase future dialysis businesses acquired or operated by FMC outside of

Hawaii but in the "Pacific Islands."  The March 2000 Release and Waiver Agreement then states that the October 1998 Letter Agreement is "attached to this Agreement and incorporated by reference."  Even if all of the terms of the October 1998 Letter Agreement were incorporated by reference into the March 2000 Release and Waiver Agreement, it is not at all clear that the nonassignability clause applies.  As discussed above, the Joint Venture Agreement prohibits the assignment of any "Membership Interest" without prior consent of the other party.  "Membership Interest" is defined as an ownership interest in the joint venture, "including all rights pertinent thereto."  FMC does not establish that the covenant not to compete in Hawaii contained in the October 1998 Letter Agreement or St. Francis's option to purchase 60% of any future Hawaii dialysis business run by FMC is a "right pertinent" to St. Francis's ownership interest in the joint venture.

        C.    An Issue of Fact Exists as to Whether the
              Conditions Subsequent Have Been Satisfied.

FMC argues that the 60% option in the March 2000 Release and Waiver Agreement is not enforceable because conditions subsequent have not been satisfied.  See Stevens v. Cliffs at Princeville Assocs., 67 Haw. 236, 241, 684 P.2d 965, 969 (1984) ("A condition subsequent in a contract is a condition which divests a liability on a contract after it has once accrued.  A condition subsequent presupposes a presently

21

enforceable agreement and is very rare and not favored in the law."); see also 13 Williston on Contracts § 38:9 (Westlaw 2009) ("A condition subsequent in a contract is a condition which divests a liability on a contract after it has once accrued. A condition subsequent presupposes a presently enforceable agreement and is very rare and not favored in the law.").

In the last paragraph on page 3 of the agreement, St. Francis and FMC agreed that the 60% option "shall be effective only once all applicable legal and regulatory constraints have been satisfied, or removed, in FMC's reasonable discretion."  FMC argues that the dialysis business is regulated in Hawaii and that regulators would not allow Liberty Dialysis to acquire a controlling interest in FMC's six Hawaii dialysis businesses. FMC reasons that regulators would be concerned that Liberty Dialysis would have nearly a monopoly with respect to dialysis businesses in Hawaii.  FMC contends that both the State Health Planning and Development Agency and the State Attorney General would disapprove the sale.  Even if FMC ultimately turns out to be correct, this argument does not justify summary judgment.

Caputo indicates that Liberty Dialysis intends to obtain all necessary regulatory approvals and, if necessary, will "take curative measures to bring the transaction into compliance with regulatory standards, such as acquiring only a portion of the centers that are subject to the option."  Caputo Decl. ¶ 10.

22

Caputo further indicates that Liberty Dialysis "is prepared to sell one or more of its existing facilities, if necessary, to bring the transaction into regulatory compliance." Id.   A question of fact therefore exists as to whether FMC is reasonably exercising its discretion in determining whether "applicable legal and regulatory constraints have been satisfied, or removed."  See Gorman v. Wolpoff & Abramson, LLP, 552 F.3d 1008, 1017 (9th Cir. 2009) ("We have held that summary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." (quotations omitted)).

FMC turns to a second condition that it says has not been satisfied.  According to the March 2000 Release and Waiver Agreement, the "Agreement and the rights and obligations contained herein, are specifically condition[ed] on FMC's acquisition of all of the Hawaii Units and Pacific Island Units." FMC says that, because it did not purchase any Guam dialysis business, it did not purchase all of the Hawaii and "Pacific Island" units, as required to render the 60% option right effective.

FMC may be arguing too much here.  The condition subsequent states: "This Agreement and the rights and obligations contained herein, are specifically condition[ed] upon FMC's

23

acquisition of all of the Hawaii Units and Pacific Island Units." March 2000 Release and Waiver Agreement ¶ 4 (emphasis added).  If acquisition of Guam and Hawaii units was required, it was required not just for the 60% option, but for almost the entire March 2000 Release and Waiver Agreement.  That is, under FMC's argument, not only is the 60% option unavailable, the waiver of the noncompete clause is ineffective.  If the waiver is ineffective, then FMC (through Bio-Med) is operating the Hawaii dialysis centers in violation of the October 1998 Letter Agreement's covenant not to compete, which remains unaltered.  If the court accepts FMC's argument that a condition subsequent has not occurred, it may well be that, notwithstanding FMC's payment to St. Francis of $1,000,000, FMC may be violating the covenant not to compete given the ineffectiveness of St. Francis's release and waiver of its noncompete rights.

Moreover, if the March 2000 Release and Waiver Agreement is not effective, it may not have superseded the January 2000 Release and Waiver Agreement.  The January 2000 agreement, which also released and waived St. Francis's rights under the noncompete provision of the October 1998 Letter Agreement, contained a provision granting St. Francis the option to purchase 60% of any future FMC dialysis business in Hawaii. The January 2000 agreement had no contingency pertaining to the purchase of the Guam businesses.

24

The language of the March 2000 agreement indicating
that it was contingent on the sale of both the Hawaii and the
Guam businesses is further belied by the parties' conduct.  This
conduct raises the issues of whether FMC is estopped from relying
on the reference to Pacific Island units, whether the parties
waived the contingency, or whether that language was based on a
mutual mistake.  On December 31, 2001, St. Francis agreed to sell
its ownership interest in the joint venture to FMC.  See Purchase
Agreement (attached to Plaintiffs' Concise Statement as Ex. 13).
Paragraph 8.5(b) of that agreement indicates that the "Release
Agreement," defined on page 6 of the purchase agreement as the
March 2000 Release and Waiver Agreement, "shall remain in full
force and effect, without modification as a result of the
transactions contemplated herein."  As of December 31, 2001, the
parties therefore appear to have contemplated that the March 2000
Release and Waiver Agreement, including St. Francis's right to
purchase 60% of the Hawaii dialysis businesses, was still
effective.  At the very least, FMC's argument raises issues of
fact not amenable to resolution on this motion.

> D.   Changed Circumstances Do Not Excuse FMC's
>      Noncompliance with the 60% Option.

FMC argues that, because St. Francis sold its dialysis
business to Liberty Dialysis in August 2005, the purpose of the
March 2000 Release and Waiver Agreement has been so frustrated
that FMC has been relieved of its obligation to transfer 60% of

25

the dialysis business to Liberty Dialysis.  See United States v. Grayson, 879 F.2d 620, 624 (9th Cir. 1989) ("the frustration of purpose doctrine is only applicable when a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." (quotations omitted)); Restatement (Second) of Contracts § 265 ("Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."); 17A Am. Jur. 2d Contracts § 651 (Westlaw 2009) (noting that the doctrine of frustration of purpose relieves a party of obligations under a contract when the parties could not have reasonably foreseen contingincies that later arose; "The essential elements of the defense of frustration of purpose are frustration of the principal purpose of the contract, the frustration being substantial, and the nonoccurrence of the frustrating event was a basic assumption on which the contract was made.").

FMC says that the purpose of the 60% right was to protect St. Francis's ongoing dialysis business.  Because St. Francis sold that business, FMC says that the 60% right is no

26

longer necessary to protect St. Francis.  The fallacy of this argument is that it assumes that the right was to protect St. Francis and not St. Francis's business.  St. Francis transferred its 60% right to Liberty Dialysis by selling the dialysis business.  This indicates that the 60% right was part of the goodwill of St. Francis's business, rather than merely a right designed to protect St. Francis.  FMC fails to demonstrate a changed circumstance that excuses its noncompliance with the 60% right.  At a minimum, a genuine issue of fact exists as to the purpose of the March 2000 Release and Waiver Agreement that precludes summary judgment here.

     E.   <u>Damages.</u>

     In their opposition, Liberty Dialysis and St. Francis argue that, if specific performance of the 60% option is not available, they are entitled to damages.  This court need not rule on this contention, as it was not raised in any motion and therefore has not been fully briefed.  The court leaves for another day issues such as the effect of applicable statutes of limitations on damage claims asserted in the Amended Complaint.

V.      CONCLUSION.

For the reasons set forth above, Defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 19, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Liberty Dialysis - Hawaii LLC, et al. v. Fresenius Medical Care Holdings, Inc., CIVIL NO. 07-00286 SOM/KSC; ORDER DENYING MOTION FOR SUMMARY JUDGMENT